AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT



**LODGED**
CLERK, U.S. DISTRICT COURT
**9/19/25**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MRV_____ DEPUTY

for the

Central District of California

| | | |
|---|---|---|
| United States of America | | |
| v. | | |
| FRANKIE MATHEW LERENA, | | Case No.   2:25-mj-05827-DUTY |
| Defendant(s) | | |

**FILED**
CLERK, U.S. DISTRICT COURT
**09/19/2025**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____GR_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 9, 2025 in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/*
*Complainant's signature*

Steven Flores, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   September 19, 2025

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Karen Stevenson, U.S. Magistrate Judge
*Printed name and title*

SAUSA: Blake Hannah

**AFFIDAVIT**

I, Steven Flores, being duly sworn, declare and state as follows:

## I.    PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against, and arrest warrant for, FRANKIE MATHEW LERENA for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. INTRODUCTION

3.    I am a Deputized Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, currently assigned to the Los Angeles Field Division, as well as a Police Officer with the Los Angeles Police Department ("LAPD"). I have been employed by LAPD as a police officer since 2015. I am currently tasked with investigating cases involving violent and/or serious felonious offenses, including, but not limited to, firearms, narcotic, and gang related crimes.

4.     During my tenure as a police officer and a TFO, I have authored and participated in numerous state and federal search warrants, controlled purchases of narcotics and firearms, surveillance operations, interceptions of consensually monitored telephone calls, and the arrests of organized crime suspects involved in state and federal offenses including, but not limited to, robbery, burglary, arson, firearms, and drug trafficking, including the trafficking, possession, transportation, distribution, sales, and manufacturing of narcotics and firearms. I have also been introduced to, and been a handler for, confidential informants and sources that possessed extensive knowledge of the inner workings of firearm and narcotics trafficking as well as to criminal street gangs. I have investigated, interviewed, arrested, and/or debriefed numerous suspects of various crimes, including gang members and associates, and victims and witnesses of various crimes, including gang related crimes. I have received informal and formal training from police officers, detectives, prosecutors, gang and narcotic experts, and federal agents who are familiar with the way these crimes are committed. I have become familiar with the methods, practices, and tactics used to avoid law enforcement by suspects of these crimes and have gained knowledge as to the planning, preparation, and execution of these crimes.

### III. **SUMMARY OF PROBABLE CAUSE**

5.     On August 9, 2025, LAPD Officers assigned to the Mission Division Gang Enforcement Detail ("GED") arrested

Frankie Mathew Lerena ("LERENA"), a convicted felon, because they found a loaded firearm, specifically a Taurus, .45 caliber, semi-automatic handgun, bearing serial number NFM28359, in his possession. LERENA made statements to police officers and on recorded jail calls demonstrating he knowingly possessed the firearm.

### IV. STATEMENT OF PROBABLE CAUSE

6.   Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own knowledge of the investigation, I am aware of the following:

**A.   LAPD GED Officers Were Patrolling Within the Boundaries of a Gang Activity Area in the Sylmar Neighborhood**

7.   On August 9, 2025, LAPD Officers assigned to the Mission Division GED were patrolling in the area of Hubbard Street and Fellows Avenue, within the neighborhood of Sylmar, County of Los Angeles, California, an area known to the officers, based on their training and experience, as a gang activity area, specifically one claimed and frequented by a local criminal street gang named "San Fer."

**B.   LERENA Was a Passenger of a Car Stopped by LAPD for a Vehicle Code Violation**

8.   The LAPD GED officers observed a 2014 gray Nissan Maxima (the "Nissan"), bearing California license plate 8NYB243, driving without headlights or running lamps on during darkness, in violation of California Vehicle Code ("CVC") § 24250, and with a driver side brake lamp not in working order, in violation

of CVC § 24252. The officers conducted a traffic stop by activating their lights and sirens.

9.    The Nissan turned into a gas station parking lot.  The officers spoke with the driver and two passengers and obtained their California identification cards.  LERENA was sitting in the rear cab of the Nissan behind the driver's seat and told the officers that he was on parole.

10.    An LAPD officer utilized the police vehicle's mobile digital computer to conduct a computer query of the Nissan's registration status, the license and identification status of the occupants, and LERENA's parole status. The query confirmed LERENA was on active Post-Release Community Supervision ("PRCS") with conditions to submit to search and seizure stemming from a previous felony conviction in violation of California Penal Code § 29800(A)(1): Felon in Possession of a Firearm (Superior Court of the State of California, County of Los Angeles Case No. 24SFCF00553-01).

**C.    LAPD Officers Conducted a PRCS Compliance Check and Found a Loaded Firearm**

11.    LAPD officers detained LERENA while they conducted a PRCS compliance check. Prior to searching the Nissan, an LAPD officer asked LERENA if he had anything in the trunk for the purpose of the compliance check. LERENA replied that his belongings were only located where he was seated, indicating the rear cab of the Nissan behind the driver's seat. The LAPD officer searched the rear passenger cab of the Nissan behind the driver's seat.

12. The LAPD officer found a black satchel on the floorboard of the rear cab within reach of where LERENA was seated. The officer opened the bag and found a firearm, specifically a Taurus, .45 caliber, semi-automatic handgun, bearing serial number NFM28359. The officer found four live ammunition rounds inside the firearm's magazine and one live ammunition round in the chamber. In total, the officer seized five rounds of .45 caliber live ammunition. The officers conducted a computer query utilizing DOJ database Automated Firearm System of the firearm's serial number, which revealed the firearm was not registered.

**D.   LERENA Was Mirandized and Admitted to Possessing the Firearm**

13. Officers placed LERENA under arrest for violations of California Penal Code §§ 29800(A)(1): Felon in Possession of a Firearm and 3455(C): Revocation of PRCS Conditions.

14. LAPD Officers read LERENA the Miranda Admonition, per LAPD Form 15.03.00. LERENA verbally acknowledged he understood his rights and later provided officers with a statement at the station. LERENA admitted to knowing the firearm was inside the Nissan and provided details of the firearm demonstrating his knowledge, including that the make was a "Taurus."

15. On or about August 13, 2025, I reviewed LERENA's recorded jail calls. On or about August 10, 2025, LERENA told an unidentified male that he was arrested due to being "caught with a blinky." LERENA explained, "they fucking stopped us and you know I had a blinky on me." I know, due to my training and

experience, the term "blinky" is slang for a firearm. Prior to disconnecting the phone call, LERENA told the unidentified male, "SAN FER until the day I drop homie," showing allegiance to his criminal street gang until death.

16.  On or about August 10, 2025, LERENA spoke to another unidentified male, who I believe was A.F., the front passenger of the Nissan.  This belief is based on the context of the call as well as my review of the body-worn camera ("BWC") footage from the August 9, 2025 traffic stop.  Specifically, A.F.'s voice on the BWC is similar to the voice of the unidentified male.  During the call, LERENA admitted that he brought "it" and explained he was arrested because he was "stupid" for "bringing it" with him.

**E.    LERENA Admitted to Membership of the SAN FER Criminal Street Gang**

17.  During LERENA's booking process, LERENA informed officers he is a documented and self-admitted San Fer gang member with the moniker of Mighty. Officers observed gang tattoos on LERENA including the letters "SAN FER" on LERENA's stomach and leg, and the letters "MIGHTY" on LERENA's neck.

**F.    LERENA'S Criminal History**

18.  I have reviewed LERENA's criminal history records and learned that he has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

a.  On or about June 10, 2024, a conviction for Felon in Possession of a Firearm, in violation of California Penal

Code § 29800(A)(1), in the Superior Court of the State of California, County of Los Angeles, case number 24SFCF00553-01;

b.   On or about August 2, 2022, a conviction for Receiving Stolen Property, in violation of California Penal Code § 496d, in the Superior Court of the State of California, County of Los Angeles, case number XNVPA098093-01;

c.   On or about January 18, 2022, a conviction for Vehicle Theft, in violation of California Vehicle Code § 10851(A), and a conviction for Eluding a Pursuing Peace Officer, in violation of California Vehicle Code § 2800.2, in the Superior Court of the State of California, County of Los Angeles, case number LASPA097551-01.

**G.   Interstate Nexus**

On August 19, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Alexander Liwienski examined the firearm and ammunition seized from LERENA and confirmed that the firearm and ammunition were manufactured outside the State of California.  Because the firearm and ammunition were found in California, SA Liwienski believes that they have traveled in and affected interstate commerce.

**V.   CONCLUSION**

19.  For all the reasons described above, there is probable cause to believe that LERENA has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

\\

\\

_____/s/_____
STEVEN FLORES, Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms, and Explosives


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 19th day of
September, 2025.

_____
Honorable Karen Stevenson
UNITED STATES MAGISTRATE JUDGE